### In the Matter of KAREN A.B.

Supreme Court of Delaware.

Submitted: March 27, 1986.
Submitted on Reargument:
June 30, 1986.
Decided: July 28, 1986.

Joel D. Tenenbaum (argued) of Woloshin, Tenenbaum & Natalie, P.A., Wilmington, for petitioner-appellant.

Joanna Reiver of Schlusser and Reiver, Wilmington, for respondent-appellee.

Before CHRISTIE, C.J., McNEILLY, HORSEY and MOORE, JJ., constituting the Court *en banc.*

PER CURIAM:

This is an appeal from the Family Court's denial of the petition of Catholic Social Services, Inc. ("petitioner") to terminate and transfer the parental rights of the natural parents of Karen A.B. This Court initially affirmed the Family Court's decision by order dated April 24, 1986, ruling that the child's father, who is unaware of her birth, has a due process right to notice of the termination proceedings. After reargument before this Court sitting *en banc,* we now reverse the Family Court's decision and remand the case so that the parents' rights may be terminated.

The mother of Karen A.B. had a non-marital relationship with an unnamed man in the summer of 1984 that resulted in the mother giving birth to Karen in March 1985. At the time of the relationship, the child's father was approximately nineteen years old, had no steady job, and had been employed at several places within the preceding few months. His employment consisted of brief stints at restaurants and gas stations. The mother has had no contact with him since then. To the best of the mother's knowledge, the father did not know about her pregnancy and does not know about the birth of the child.

The petitioner was first contacted by St. Francis Hospital when the baby, born at home, received follow-up care at St. Francis. The petitioner later asked the Family Court to terminate the parental rights of both the mother and father and transfer those rights to the petitioner so that the child could be put up for adoption.

The mother is very willing to have her parental rights terminated, but she has refused to name the father[1] for fear he will return and harass her and her family if he is told of Karen's existence. According to the mother, the father is very aggressive and has a tendency to get into fights with others. She believes he might vandalize her family's house and possessions and commit violence against them. Finally, she believes the father would not be able to care for Karen and would not want to undertake that responsibility. The petitioner has been unable to determine the identity or location of the father on its own.

The Delaware Legislature has clearly set forth the required contents of a petition to terminate parental rights in 13 *Del.C.* § 1105.[2] Section 1105(a)(5)b provides the

---

1. The mother knows the father's identity but does not know where he lives.

2. 13 *Del.C.* § 1105 provides in pertinent part:
   (a) The petition for the termination of parental rights shall state the:

(5) If the child was born out of wedlock, the name and address of the mother and her marital status at the time of the child's conception and birth, and, in the event she was married at the time of the child's conception

petition may state that the mother knows the name of the father but is unwilling to disclose it, as does the petition in this case. Under § 1105(a)(9), if the name of the father is not included, the petition must describe the petitioner's efforts to identify and locate the father. The petitioner has complied with this requirement.

13 *Del.C.* § 1106,[3] containing the parental consent requirements, provides that if it is established on the record that the mother and father are not living together as husband and wife openly and have not done so since the birth of the child, the Court may, after a hearing and consideration of the social report, dispense with the father's consent in accordance with 13 *Del.C.* § 1113, which sets as the paramount objective in resolving disputes the best interest of the child.[4] Nevertheless, the Family Court refused to terminate the father's parental rights without his consent because, being unaware of Karen's existence, he has been denied the opportunity to express any interest in her or meet any of his parental responsibilities.

■ We conclude, however, that it is in Karen's best interest that her father's parental rights be terminated without notice to him and without his consent, pursuant to 13 *Del.C.* § 1106. While there is minimal information in the record concerning the father's disposition and employment status, and little concerning the petitioner's own attempts to identify and locate him, the record suggests that he would not be able to adequately care for the child and would not want to do so. Most importantly, should we refuse to terminate his rights, Karen would face the possibility of perpetual foster care, a result that we cannot sanction. Moreover, we are conscious of the mother's privacy interest in being free from harassment by Karen's father.

■ As for whether the father has a due process right to notice of the termination proceedings, we now find after reargument in this case that he does not. In a case similar to the one at bar, the United States Supreme Court stated:

When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," *Caban*, 441 U.S. [380] at 392, 99 S.Ct. [1760]

---

or birth, the name and address of the mother's husband at those times, and an affidavit by the mother setting forth either:

   a. The name and last known address of the natural father; or

   b. A statement that the mother knows the name of the natural father but is unwilling to disclose the name of the natural father; or

   c. A statement that the mother does not know the name of the natural father; or

   d. The name of the natural father, and a statement that the mother has never known his address;

  .  .  .  .  .

   (9) In addition to other pertinent information, the petition shall, if the name and/or address of the natural father is not included, furnish detailed information concerning the efforts made to identify and locate the natural father so as to enable the Court to determine what further steps, if any, should be taken.

**3.** 13 *Del.C.* § 1106 provides in pertinent part:

In the case of proceedings based on § 1103(1) of this title:

   (1) A petition for the termination of parental rights shall be accompanied by the duly notarized consent in writing of the person or persons or organization holding parental rights;

   (2) The consent provided for in subdivision (1) of this section shall be required from:

   a. Both parents of a child born out of wedlock.... It is further provided that in the event of a petition containing statements described in § 1105(a)(5)(ii), (iii) or (iv) of this title, after a hearing in which it is established on the record that the mother and father of the child are not living together as husband and wife openly and that they have not done so nor married since the birth of the child, the Court may, following consideration of the social report, dispense with the requirement of the father's consent in compliance with § 1113 of this title.

**4.** 13 *Del.C.* § 1113 provides:

This chapter is designed to achieve without undue delay the paramount objective of the best interest of the child, and all questions of interpretation shall be resolved with that objective in mind. Where there appears to be a conflict between the best interest of the parent(s) and the child, the best interest of the child shall prevail.

at 1768 [60 L.Ed.2d 297 (1979)], his interest in personal contact with his child acquires substantial protection under the Due Process Clause.... But the mere existence of a biological link does not merit equivalent constitutional protection.

*Lehr v. Robertson,* 463 U.S. 248, 261, 103 S.Ct. 2985, 2993, 77 L.Ed.2d 614 (1983).

\*     \*     \*     \*     \*     \*

REVERSED and REMANDED for further proceedings consistent with this opinion.